Case 3:22-cv-00314   Document 13   Filed on 09/26/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| DON CORNELIUS AUBREY, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00314 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## <u>OPINION AND ORDER</u>

Plaintiff Don Cornelius Aubrey ("Aubrey") seeks judicial review of an administrative decision denying his application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Aubrey and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 9, 11. After reviewing the briefing, the record, and the applicable law, Aubrey's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 11) is **GRANTED**.

## BACKGROUND

On September 22, 2020, Aubrey filed applications for Title II disability insurance benefits and Title XVI supplemental security income, alleging disability beginning September 24, 2012. Aubrey subsequently amended his alleged onset date to September 22, 2020, resulting in the dismissal of his Title II claim. Aubrey concedes that this appeal concerns only his Title XVI claim. *See* Dkt. 9-1 at 2. Aubrey's Title XVI application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Aubrey was not disabled. Aubrey filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Aubrey had not engaged in substantial gainful activity since September 22, 2020. *See* Dkt. 6-4 at 8.

The ALJ found at Step 2 that Aubrey suffered from "the following severe impairments: right eye glaucoma and cataracts, left eye cataracts, status-post remote lens replacement, cervical degenerative disc disease, cervical radiculopathy, lumbar degenerative disc disease, bipolar disorder, and post-traumatic stress disorder (PTSD)." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 9.

Prior to consideration of Step 4, the ALJ determined Aubrey's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. He is limited to occupations that do not require depth perception. He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced

production requirements, involving only simple work-related decisions and routine workplace changes.

*Id.* at 12.

At Step 4, the ALJ found that "[Aubrey] is unable to perform any past relevant work." *Id.* at 15.

At Step 5, relying on the Medical-Vocational Guidelines, the ALJ found that Aubrey is not disabled because "there are jobs that exist in significant numbers in the national economy that [Aubrey] can perform." *Id.* at 16.

## DISCUSSION

Aubrey advances several arguments why I should reverse the ALJ's decision, but all are in furtherance of one issue: whether the ALJ's decision is supported by substantial evidence. For the reasons explained below, I find it is.

A. **THE ALJ DID NOT ERR IN DEVELOPING THE RECORD**

  1. **42 U.S.C. § 421(h) Does Not Apply to this Case**

At the initial level of review, the state agency psychological consultant—Dr. Joshua J. Boyd, Psy.D.—found that Aubrey had "[n]o mental medically determinable impairments." Dkt. 6-6 at 30. The ALJ found Dr. Boyd's opinion "unpersuasive" and "not supported by [Dr. Boyd's] analysis of the evidence reviewed." Dkt. 6-4 at 15. Aubrey argues that once the ALJ discounted Dr. Boyd's opinion, "the ALJ i) should have found that the State Agency did not duly comply with 42 U.S.C. § 421(h) by obtaining Dr. Boyd's review . . . and ii) should have rectified the error by obtaining a new opinion." Dkt. 9-1 at 7–8.

In making this argument, Aubrey asks me to follow the approach of the district court in *Adonis C. v. Commissioner*, No. 1:21-cv-658, 2022 WL 17488711 (N.D. Ga. Sep. 19, 2022), and hold that an ALJ "is obligated to rectify a State Agency's deficient compliance with subsection (h)" of 42 U.S.C. § 421. Dkt. 9-1 at 5. Specifically, subsection (h) states that

> An initial determination [of disability]. . . shall not be made until the Commissioner . . . has made every reasonable effort to ensure—

> (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h). The Commissioner failed to address Aubrey's interpretation of § 421(h) in her cross-motion, arguing that "the decision to obtain medical expert opinion is within the ALJ's bailiwick" and that, in this case, "the ALJ did not need opinion evidence to render her decision." Dkt. 11-1 at 14. Aubrey's counsel, as an officer of the court, volunteered that "the United States District Courts for the Southern District of Mississippi, Middle District of Louisiana, and Northern District of Texas have disagreed with Plaintiff's application of 42 U.S.C. § 421(h) to ALJs, insisting that it is only applicable to initial agency reviews." Dkt. 12 at 3 (collecting cases). I appreciate the candor of Aubrey's counsel, but I need not discuss these cases or even reach this argument.

Even if I were to follow *Adonis* and accept Aubrey's interpretation of § 421(h) as creating an obligation for the ALJ to order a medical opinion where the state agency did not have "a qualified psychiatrist or psychologist . . . complete[] the medical portion of the case review," such an interpretation would not help Aubrey here. 42 U.S.C. § 421(h)(1). As Aubrey notes, "the State Agency did attempt to comply with 42 U.S.C. § 421(h) by obtaining review by Dr.Boyd." Dkt. 9-1 at 7. It is undisputed that Dr. Boyd is "a qualified psychiatrist or psychologist." 42 U.S.C. § 421(h). The fact that "Dr. Boyd's findings could not have meaningfully informed the ALJ's analysis of the record," Dkt. 9-1 at 7, does not somehow render Dr. Boyd unqualified. Because the state agency here had a qualified psychologist—Dr. Boyd—"complete[] the medical portion of the case review," 42 U.S.C. § 421(h), *Adonis* is inapposite. *See Adonis*, 2022 WL 17488711, at *4 ("It is undisputed that no such review [by a qualified psychologist] was conducted."). Thus, § 421(h) does not apply to this case. The ALJ was not required to order a medical opinion simply because she found Dr. Boyd's opinion unpersuasive.

5

### 2.     The ALJ Did Not Err in Developing the Record

Aubrey next argues that remand is required because "the ALJ found the only mental health opinion of record to be of no use and the ALJ could not otherwise adequately judge the consequences of Plaintiff's complex [mental health] issues, [therefore] the ALJ should have developed the record before independently evaluating Plaintiff's complex [mental health] conditions." Dkt. 9-1 at 8–9 (citation omitted). Similarly, with regard to his physical impairments, Aubrey argues that remand is required because "[t]he ALJ rejected the only opinion of record and independently assessed Plaintiff's [physical] issues, including cervical radiculopathy, lacking sufficient information to make such a decision." *Id.* at 10 (citation omitted). In support of these arguments, Aubrey relies on "[t]he Fifth Circuit's contemporary interpretations of *Ripley* [*v. Chater*, 67 F.3d 552 (5th Cir. 1995)]," for the proposition "that when the evidence as a whole is insufficient to allow a determination or when development [such as a consultative exam] is necessary to enable the ALJ to make the disability decision, the court is able to remand the matter for development of the record." *Id.* at 6 (first alteration added). I will assume, without deciding, that consultative psychological and physical medical examinations were necessary. Even so, Aubrey must still demonstrate that the ALJ's failure to order a consultative examination prejudiced him.

In the Fifth Circuit, a plaintiff establishes prejudice by showing that a consultative medical examination "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted). But Aubrey does not offer any argument or evidence that demonstrates "how additional consultative examinations would have led to a more favorable decision." *Williams v. Berryhill*, No. 3:18-cv-1913, 2019 WL 4393635, at *13 (N.D. Tex. Sept. 13, 2019). In his reply, Aubrey merely argues that "the ALJ has already acknowledged that there are further limitations [than assessed by the state agency psychological consultant]." Dkt. 12 at 1. This argument does nothing to demonstrate what evidence a consultative examination would have adduced, or

6

how it would have altered the result.[1] Thus, Aubrey cannot demonstrate that the ALJ's failure to order a consultative examination was prejudicial.

### 3. The ALJ's RFC Is Supported by Substantial Evidence

Aubrey points to "a mental health analysis conducted during the relevant period which showed that [he] had tangential speech and abnormal behavior," and "evidence that [Aubrey] had difficulty interacting with providers" as "objective medical evidence that contradict[s] the ALJ's RFC finding." *Id.* at 2. Yet, Aubrey does not explain *how* these fleeting observations are contrary to the ALJ's RFC, beyond the conclusory statement that they are. "A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777 (quotation omitted). The phrase "no contrary medical evidence" means that "[n]o medical evidence contradicts [the claimant's disability]." *Payne v. Weinberger*, 480 F.2d 1006, 1008 (5th Cir. 1973).

> That is not the case here, where the ALJ observed:
>
> Mental status examinations reveal [Aubrey] has normal mood, affect, behavior, concentration, memory, insight, judgment, thought content, thought process, and cognitive function. That such findings have been present on multiple examinations suggests that despite some functional restrictions due to mental symptoms, [Aubrey] retains more functional ability than alleged. That is, despite abnormalities on examinations, the largely unremarkable objective findings indicate the presence of greater functional ability than alleged.
>
> [Aubrey] alleges difficulty concentrating and sleep disturbances; however, the objective evidence reveals he is negative for decreased concentration and sleep disturbance. Such vast inconsistencies between [Aubrey's] allegations and the objective evidence further suggests greater restrictions are not supported.
>
> Treatment notes from May 2021, reveal [Aubrey] has refused medication and copes with his mental symptoms with prayer and "strength." [Aubrey] had previously received medication only through a primary care physician and not from a mental health care

---

[1] Aubrey makes no arguments in his reply regarding his *physical* limitations.

> professional. Currently, [Aubrey] does not receive therapy, medication management, or any other mental health treatment and there is no indication in the objective evidence of worsening symptoms. [Aubrey] has no prior inpatient mental health treatment, and he denies suicidal and homicidal ideations, as well as psychosis. Due to unremarkable mental status examinations, conservative or complete lack of treatment, and greater functional abilities than alleged, further restrictions are not supported.

Dkt. 6-4 at 14 (citations omitted). "[C]onflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ." *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). Here, a single reference to "tangential speech [and] abnormal behavior" (Dkt. 6-18 at 39), and Aubrey's getting "upset" and walking away from a pain management provider who "reviewed [Aubrey's] record and [informed Aubrey] that he was seen by Pain Management [16 days earlier] for the same symptoms" (Dkt. 6-27 at 16–17)—especially in light of the ALJ's detailed analysis of Aubrey's mental health records—are simply not enough to render the ALJ's decision unsupported by substantial evidence.

Aubrey also argues that "the ALJ did not have a commonsense basis for finding that light work was sufficient to account for [Aubrey]'s [physical] impairments, which included neck issues with comorbid upper extremity issues." Dkt. 9-1 at 9. I disagree. The ALJ observed:

> The objective medical evidence does not support [Aubrey]'s allegations of debilitating symptoms and limitations. The longitudinal objective evidence reveals that despite [his] reports of pain . . ., [he] generally has unremarkable physical examinations. [Aubrey] is in no distress and has normal gait, as well as normal range of motion and full strength in his upper and lower extremities with no neurological deficit or edema present. [He] has normal range of motion in his cervical and lumbar spine with no rigidity or tenderness present. Lumbar imaging tests reveal only minimal endplate spurring and mild facet degenerative changes with no fractures, spondylolisthesis, or spondylolysis present. Cervical imaging tests reveal only mild degenerative endplate spurring and mild facet degenerative changes. *That such findings have been present on multiple examinations suggests that, despite some functional restrictions due to pain,*

8

> *[Aubrey] retains more functional ability than alleged.* That is, despite abnormalities on examinations, the largely unremarkable objective findings indicate the presence of greater functional ability than alleged. Indeed, [Aubrey] has not received physical therapy, injections, or surgical intervention. The longitudinal record reveals noncompliance with medication and missed appointments. In September 2021, [Aubrey] ceased going to the pain clinic and stated, "the pain management doctor was not helping me." Treatment notes from March 2021 state that [Aubrey] had not been on any medication since being released from prison in September 2020. [Aubrey] testified that he occasionally uses a cane for ambulation; however, there is no evidence of a prescribed assistive device in the record and no opinion that an assistive device is medically necessary. *Such routine and conservative treatment, as evidenced in the objective record is not indicative of the significant levels of pain and distress [Aubrey] has reported.* Due to unremarkable physical examinations, conservative or complete lack of treatment, and greater functional abilities than alleged, further restrictions are not supported.

Dkt. 6-4 at 13 (emphasis added) (citations omitted) (quoting Dkt. 6-27 at 16–17). The ALJ's articulation of the disconnect between Aubrey's complaints and his physical examinations, medical testing, and lack of treatment is substantial evidence that supports the ALJ's decision. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (upholding "the ALJ's finding that [the claimant]'s complaints were not debilitating" as "supported by substantial evidence" where "several of the symptoms allegedly plaguing [the claimant] were not consistent with the objective medical evidence").

## CONCLUSION

For the reasons provided above, Aubrey's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 11) is **GRANTED**.

SIGNED this 20 day of September 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE